UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ERIN BROWNE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:23-cv-64-GSL-AZ |
| EQUIFAX INFORMATION SERVICES LLC, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on non-party Mercedes Kurtis's Motion to Intervene and Modify Protective Order [DE 90], filed on December 23, 2024, and discussed at the January 23, 2025 status hearing [DE 95]. Plaintiff Erin Browne filed this lawsuit to challenge Defendant Equifax Information Services, LLC's handling of her credit reporting. Kurtis also has a lawsuit against Equifax—filed around the same time as this case—but hers was pending in Indiana state court (at least at the time the motion was fully briefed) and relates to allegations of how Equifax handled *her* credit reporting. Both Browne and Kurtis are represented by the same counsel, and through her present motion, Kurtis seeks to intervene in this lawsuit so that she can use discovery taken in this case for use in her own case. For the reasons discussed in this opinion, Kurtis's motion is denied.

### Background

Plaintiff Erin Browne alleges that Equifax kept an inaccurate entry on her credit report from a landlord. DE 10 ¶¶ 2–3. She says that Equifax continued to report

this inaccurate debt even after she disputed the debt with one of the company's dispute agents, successfully sued the landlord, prevailed in her lawsuit, and furnished Equifax with the judgment. *Id.* at ¶¶ 6–8. Browne claims Equifax's failure to remove the debt and its general debt reporting practices violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

Proposed interventor Mercedes Kurtis's lawsuit is generally similar to Browne's. Until very recently, Kurtis's case was being litigated in Indiana state court, but the case has since been removed to federal court by Equifax on February 4, 2025, and Kurtis has filed a motion to remand to state court. *See Kurtis v. Equifax Information Services LLC, et al.*, Case No. 4:25-cv-8-GSL-JEM (N.D. Ind.) at DE 1, 18. Like Browne, Kurtis has an FCRA lawsuit against Equifax based on Equifax's alleged treatment of inaccurate information from a landlord in her credit report. But beyond those facial similarities, there is no real commonality between Browne's and Kurtis's lawsuits. Browne and Kurtis have their own credit reports, their own individual landlords who reported information to Equifax, and their own individual basis for disputing the information with Equifax. What's more, it appears that different Equifax agents handled Browne's and Kurtis's respective disputes.

Browne and Kurtis filed their cases near in time, in April 2023 and July 2023, respectively. Discovery in both cases has closed. In this case, fact discovery closed on November 24, 2024. In Kurtis's case, discovery closed on December 23, 2024. And in both cases the parties conducted ample discovery during that time. On November 15,

2

2023, the Equifax employee who handled Browne's dispute (Jenny Chavez) was deposed in this case. On April 16, 2024, the Court entered a protective order in this case, allowing the parties to designate evidence as "confidential." *See* DE 39. Portions of Chavez's deposition were designated as confidential. On February 13, 2024, Plaintiff in this case served a deposition notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, seeking testimony on behalf of Equifax. After extensive motion practice, the Court granted Equifax a protective order which allowed the 30(b)(6) deposition to occur on a subset of the originally noticed topics. DE 49. After additional motion practice regarding the timing and place of this deposition, *see* DE 63, 64, 69, 71, 72, this deposition occurred on September 25, 2024. DE 75. Portions of that deposition were designated confidential pursuant to the protective order.

In Kurtis's case, Equifax disclosed in February 2024 the names of the dispute agents employed by third-party contractors who handled Kurtis's dispute with the company. *See* DE 91-6. But Kurtis did not depose or apparently seek to depose) any of these individuals. Instead, Kurtis took a corporate representative deposition of Equifax over two days in March 2024. Kurtis thus conducted discovery in her own case around the same time that her counsel was conducting discovery in this case. Now, with her present motion, Kurtis seeks to intervene so that she may use not only the discovery obtained her in case but the discovery in this case as well.

3

## Discussion

### A. Rule 24 Governs Intervention in Federal Court and Kurtis has No Presumptive Right to Intervene.

Rule 24(b) of the Federal Rules of Civil Procedure states the applicable legal standard regarding permissive intervention in a federal lawsuit. "On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1)(B). A would-be interventor must thus demonstrate timeliness and commonality of law or fact with the case she is seeking to become a part of. Importantly, "[p]ermissive intervention under Rule 24(b) is wholly discretionary" and is never required. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).

Before evaluating Kurtis's request further, the Court must address the appropriate standard for intervention in these circumstances and whether any presumption in favor of allowing intervention applies when a party seeks to intervene solely to modify a protective order. In her motion, Kurtis states that "[t]he Rule 24 factors are inapplicable here" and that she is "presumptively entitled to access" the discovery in this case because she has sued the same defendant and her case shares some factual similarities with this one. *See* DE 92 at 1-2. Kurtis relies on *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir. 1980) and *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994) to support her presumption argument. In those cases, third-party intervenors (in *Wilk* they were parallel litigants and in *Grove Fresh* they were members of the press) were allowed to intervene to seek

4

modification of the protective orders and access discovery materials because those materials were contained within the court files.

First, Kurtis's argument that "[t]he Rule 24 factors are inapplicable here," DE 92 at 2, is an incorrect statement of law. Neither *Wilk* nor *Grove Fresh* stand for such a proposition, and if Kurtis is not seeking to intervene pursuant to Rule 24, then it is unclear what procedural vehicle could be the basis for her intervention. The law is clear that Rule 24 must be satisfied before any party may intervene in a federal lawsuit. *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019) (holding that Federal Rules of Civil Procedure exclusively control intervention in federal court). In other words, the Rule 24 "factors" are not just applicable, they are mandatory.

Second, to the extent either *Wilk* or *Grove Fresh* ever stood for a blanket presumption in favor of allowing intervention to access discovery covered by a protective order in another case, that has not been the law for more than two decades. As the Seventh Circuit explained in 2009, much of the analysis in *Wilk* and *Grove Fresh* "[is] premised upon [the] principle that 'pre-trial discovery must take place in … public unless compelling reasons exist for denying the public access to the proceedings'" which is no longer an accurate statement of law given the 2000 amendment to Rule 5 of the Federal Rules of Civil Procedure. *Bond v. Utreras*, 585 F.3d 1061, 1068 n.4 (7th Cir. 2009); Fed. R. Civ. Pro. 5(d)(1)(A) ("discovery requests and responses *must not be filed* until they are used in the proceeding or the court

5

orders filing") (emphasis added). "Whatever force these decisions had was destroyed by the 2000 amendment to Rule 5(d), which reversed the longstanding rule generally requiring discovery to be filed with the court." *Bond*, 585 F.3d at 1076.

"The 'presumption' mentioned in these cases simply refers to the general right of the public to access material contained in court files . . .. It is a mistake to conclude . . . that [any Federal Rule of Civil Procedure] creates a freestanding public right of access to unfiled discovery." *Bond*, 585 F.3d at 1076. Leading commentators on federal court practice have likewise recognized the effect of the 2000 amendments to Rule 5. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1152 ("The 2000 amendment to Rule 5(d) eliminates the presumption of filing all discovery materials, thereby removing the presumption in favor of allowing unlimited access to all discovery materials. This limitation controls both the parties' and the media's access to those materials not considered judicial documents.").[1] The lack of presumption further makes sense given that permissive intervention is "wholly discretionary" and never required. *Sokaogon Chippewa*, 214 F.3d at 949. In other words, the primary legal basis upon which Kurtis rests her motion has not been good law for quite some time.

Thus, "where, as here, the parties have agreed to a confidentiality order

---

[1] Kurtis also relies on *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) for the proposition that "[t]he most important circumstance in this case is that intervention was not on the merits, but for the sole purpose of challenging a protective order." This out-of-circuit precedent likewise predates the 2000 amendments to the Federal Rules of Civil Procedure and is thus of little relevance. This is especially true given the clear statements regarding intervention in *Bond* which are binding on this Court.

covering unfiled discovery materials which, for good cause, was judicially approved, a district court should honor that order absent some showing of abuse or other extraordinary circumstances. To require any less of a showing would undermine the parties' reliance on protective orders, which are essential to a fair, efficient discovery process." *Bond*, 585 F.3d at 1080 (7th Cir. 2009) (Tinder, J. concurring). With these principles in mind, the Court will evaluate Kurtis's request within the confines of the requirements of Rule 24 which controls the standard for intervention in federal litigation, without regard to any outdated presumptions in favor of unfettered access to materials which are not part of the court file.

### B. Kurtis's Motion to Intervene is Untimely.

Motions under Rule 24 must be timely made. Courts "consider the following factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa*, 214 F.3d at 949.

Concerning the first factor, Kurtis knew of her potential "interest" in this case from the start. Kurtis and Browne filed their lawsuits against Equifax within a few months of one another in mid-2023. Both have also been represented by the same counsel the entire time. Furthermore, even if the point in time were only measured from when the depositions of Chavez and Equifax's 30(b)(6) witness were taken, November 2023 and September 2024 respectively, it was not until the end of

7

December 2024 that Kurtis sought to intervene. Kurtis fails to explain this three to thirteen month delay in any convincing manner. "As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he *must* move promptly to intervene." *United States v. South Bend Community Sch. Corp.*, 710 F.2d 394, 396 (7th Cir. 1983) (emphasis added). Surely if these depositions were relevant to Kurtis's cases, it was apparent to counsel at the time since he was handling both cases in tandem. But Kurtis did not move to intervene "promptly" when the cases were first filed in mid-2023 or when depositions were first being noticed and taken in early 2024. Instead, she and her counsel delayed seeking intervention by several months and only after fact discovery closed in both cases. The length of time that Kurtis knew or should have known of her supposed interest in this case weighs heavily against allowing intervention at this late stage.

Concerning prejudice to the parties of this litigation, there seems to be none with regard to Plaintiff Browne. It is after all, her counsel who is trying to bring Kurtis into this lawsuit as an intervenor. Equifax states that if the discovery in this case is allowed to be used by Kurtis, then additional discovery will likely need to be taken in that case, requiring discovery be reopened and it expend additional resources. While this particular prejudice is somewhat speculative (as there is no telling whether the parties will be permitted additional time for discovery over two months after discovery closed in Kurtis's lawsuit), Equifax has an interest in relying on the protective order entered into this case which would be upset by allowing

8

intervention and modification of the protective order. *See Bond*, 585 F.3d at 1080 (absent "some showing of abuse or extraordinary circumstances" parties should be allowed to rely on protective order) (Tinder, J. concurring). That prejudice counts for something, and so this factor weighs slightly in favor of denying the motion to intervene or is, at most, in equipoise.

Furthermore, the prejudice to Kurtis in not allowing intervention does not appear to be great. Her proffered basis for needing discovery from this case is that "the materials will enable [Kurtis] to more effectively cross examine Equifax's witness and prevent Equifax (the common defendant) from conforming its testimony to its defense in that case by providing contradictory testimony in that case, or false argument that the verification of the false information was and [*sic*] isolated incident or the product of 'human error' where the prior testimony establishes that the actions of Equifax were the product of a consistent policy and practice." DE 90 at 3. Kurtis goes no further than this vague (and frankly speculative) explanation as to why this discovery is relevant. She does not point to any specific potential contradictions between testimony in this case and Kurtis's that could form the basis for impeachment. Nor does she point to any discrepancies between Equifax's positions in the two cases. She speaks only in generalities and hypotheticals. That is not enough. Without some baseline showing of relevance beyond counsel's ambiguous say-so, the Court does not see how Kurtis will be prejudiced by being denied permissive intervention.

9

Even if the Court were to assess the prejudice inquiry as only one of judicial economy and "avoiding duplicative discovery" as Kurtis urges it to, the result is the same. At a basic level, Kurtis is correct that allowing her to intervene and obtain discovery in this case would potentially avoid her need to take discovery in her own case. That could hypothetically avoid duplication, and it is true that "Rule 24(b) is just about economy in litigation." *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011). But if it were that simple, then discovery in all cases with a common litigant would be fair game, and the purpose of case-specific protective orders would be undermined.

With discovery in both this and Kurtis's case concluded, any potential efficiency rings hollow, especially when one considers that Kurtis had every opportunity to take discovery in her case and in fact did so. Equifax disclosed the names of agents who handled Kurtis's dispute who would presumably be fact witnesses with firsthand knowledge of any dispute and investigation. But Kurtis chose not to depose or seek to depose these individuals. Kurtis raises generic arguments concerning complications of obtaining discovery from these witnesses who are employed by a third-party contractor of Equifax's and who reside outside the United States. But those burden-type arguments are not particularly germane to the issues before the Court, especially when based solely on counsel's arguments and not evidence. Kurtis took the deposition of a corporate representative of Equifax in her case, presumably on the topics of her choosing. That she is apparently unsatisfied

with the testimony she obtained in that deposition and now wants to use the testimony that Browne (represented by the same counsel) obtained in this case months later does nothing to avoid duplicative discovery.

Rather than avoiding duplicative discovery, Kurtis is seeking discovery that she failed to seek in her own case. From the record before me, Plaintiff's counsel, despite representing both Plaintiffs, filing the cases at similar times, and pursuing discovery in both cases simultaneously never sought any coordination of discovery between the cases. This could have been done through an agreement of the parties or cross-noticing of depositions in both cases. If Plaintiff had attempted that and Equifax refused, then the argument in favor of seeking to avoid duplicative discovery and conserving party and judicial resources might ring truer. But it appears that counsel decided to pursue two different tracks of discovery in two different cases. And now, with discovery in both cases closed, he seeks to merge them together for his and Kurtis's benefit. That is more akin to gamesmanship than judicial economy.

Finally, I have concerns, not directly raised by either of the parties, that if the Court were to allow Kurtis to intervene in this case, seek modification of the protective order, and obtain two deposition transcripts to use in her own case, I would be modifying the state court's management of discovery in Kurtis's case. As far as I have been made aware, discovery in Kurtis' state court case closed in December 2024 and has not been reopened, either prior to or after that case was removed to federal court on February 4, 2025. Allowing her to obtain discovery now would contravene

11

the discovery schedule set by the state court simply because a federal court's decision in another case upended its schedule. That would throw a wrench into that court's case management by allowing discovery outside the deadline. Basic principles of federalism and comity dictate that this Court should abstain from doing that. *See Younger v. Harris*, 401 U.S. 37, 44 (1971) (defining comity as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways").

## Conclusion

For the foregoing reasons, Mercedes Kurtis's Motion to Intervene and Modify Protective Order [DE 90] is **DENIED**.

SO ORDERED this 10th day of March 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT