UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ERIN BROWNE, | |
|     Plaintiff, | |
| v. | Case No. 4:23-CV-00064-GSL |
| EQUIFAX INFORMATION SERVICES LLC, | |
|     Defendant. | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DE 118] filed by Plaintiff, Erin Browne, on May 27, 2025. Defendant, Equifax Information Services, LLC, filed its Response [DE 122] on June 5, 2025, and Plaintiff replied [DE 123] on June 17, 2025. The Court granted Defendant leave to file a Surreply [DE 126], and Defendant did so on July 9, 2025. *See* [DE 127]. Plaintiff requested a hearing on the instant Motion, and the Court granted that request. *See* [DE 131-132]. The hearing was held on August 20, 2025. [DE 133]. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

### Background

On April 26, 2023, Plaintiff initiated this case in state court in Tippecanoe County, Indiana. [DE 4]. She alleged that Defendant violated the Fair Credit Reporting Act (FCRA) by falsely and inaccurately reporting that she owed a debt despite multiple attempts to rectify the errors, resulting in Defendant maintaining inaccurate information in its credit file. [*Id.*].

On July 25, 2023, Defendant removed the case to this Court. [DE 1]. Shortly thereafter, Defendant filed a Motion to Dismiss [DE 6-7] requesting that the Court either dismiss the Complaint or allow Plaintiff the opportunity to amend due to the lack of specific factual

allegations. [DE 7 at 5]. As a result, Plaintiff filed an Amended Complaint [DE 10] on August 21, 2023.[1] Defendant answered the Amended Complaint on September 5, 2025. [DE 13]. The parties engaged in extensive discovery from then until April 2025. On April 11, 2025, the parties filed cross motions for summary judgment[2]. *See* [DE 103, 108].

Shortly thereafter, and before the motions for summary judgment were fully briefed, Plaintiff filed the instant Motion, requesting that the Court remand this matter back to state court because Defendant, "as the party invoking jurisdiction[,] must prove Article III jurisdiction [and] … [it's] recent motion for summary judgment indicates [that] it has no basis." [DE 119 at 1]. More specifically, Plaintiff claims that since Defendant is the removing party, and that it now argues in its motion for summary judgment that Plaintiff "has incurred no damages – either economic or emotional distress damages – [Defendant] should be required to establish jurisdiction [in this Court]." [*Id*. at 6].

## Legal Standard

Article III of the U.S. Constitution limits the jurisdiction of federal courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). The power of federal courts is confined to "cases" and "controversies." *Id.* at 423. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* And, for there to be standing, the plaintiff must demonstrate "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

---

[1] The Court denied Defendant's Motion to Dismiss as Moot after Plaintiff filed the Amended Complaint. [DE 11].
[2] The parties' respective motions for summary judgment remain pending before the Court. [DE 103, 108].

However, when a case is removed from state court to federal court, the burden "to establish all elements of jurisdiction – including Article III standing …" is placed upon the removing defendant. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). But, "[i]f at any time before final judgment[,] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### Discussion

At issue here is whether the "injury in fact" prong for Article III standing has been met. In other words, the Court must decide whether Plaintiff's injury is of the "concrete" and "particularized" nature that is required under Article III. *See Ewing v. Med-1 Solutions*, LLC, 24 F.4th 1146, 1151 (internal quotations omitted) (holding that "[t]o be concrete, an injury must be real, and not abstract but concrete need not mean tangible"). In doing so, the Court must look to the allegations "alleged in [Plaintiff's] [Amended] [C]omplaint." *Pennell v. Global Trst Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) (internal quotations omitted) (holding that "[w]hen courts analyze standing, allegations matter[, therefore] … [w]hat matters here, then, is what [is] alleged in [the] operative complaint").

Plaintiff argues that although she has adequately pled an injury, "emotional stress and other fear about her credit worthiness," it does not constitute the type of harm that would confer jurisdiction on this Court. [DE 119 at 1]. Plaintiff further states that the issue of standing is "once again ripe" before the Court, but only because in Defendant's Motion for Summary Judgment, it claims that Plaintiff "has suffered no cognizable damage[, and] … as the party invoking jurisdiction[, it] must prove Article III Jurisdiction" at all stages of the litigation [*Id.*].

The Seventh Circuit has taken a fairly narrow view on the standing requirement in cases involving the FCRA. *See e.g. Pennell,* 990 F.3d at 1041; *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d

3

708 (7th Cir. 2021); *Nettles v. Midland Funding LLC*, 983 F.3d 896 (7th Cir. 2020); *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020); *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274 (7th Cir. 2020); *Gunn v. ThrasherBuschmann & Voelkel, P.C.*, 982 F.3d 1069 (7th Cir. 2020); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067 (7th Cir. 2020); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). Plaintiff is correct in that the Seventh Circuit has routinely rejected classifying anxiety, embarrassment, stress, and other emotional harms as "injuries-in-fact" for purposes of Article III standing. *Wadsworth v. Kross, et al.*, 12 F.4th 655 (7th Cir. 2021). However, the Seventh Circuit has accepted "risk of financial harm as a result of credit reporting agencies lowering their credit score" as sufficient to confer Article III standing. *See Evans*, 889 F.3d at 345-46; *but see Ewing*, 24 F.4th at 1152 (*citing Ramirez*, 594 U.S. at 437-38 (2021) (explaining that *Ramirez* superseded *Evans*, but only to the extent that "a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court").

As an initial note, Plaintiff's argument that Defendant has somehow "conceded" that there is no Article III standing in this case by denying that she has suffered any damages defies logic, and quite frankly defeats the purpose of the defensive function of legal representation. *See* [DE 119 at 5] (stating that Defendant "denies Plaintiff suffered any emotional distress[,] … Plaintiff's credit denials were only as to TransUnion, not [Defendant, and] … Plaintiff's damages were not as a result of [Defendant]"). Plaintiff's theory of standing would mandate remand where a defendant denies a plaintiff has been damaged, likely most of the cases in federal court.

As explained above, the allegations in the Amended Complaint are relevant for the Court's analysis of standing. *See Pennell, LLC*, 990 F.3d at 1045. In her Amended Complaint, Plaintiff alleges, *inter alia*, the following:

4

> 10. [Defendant] sold a credit report with the negative tradeline reporting, the only negative tradeline in her report at the time. This negative tradeline caused [Plaintiff] to be denied credit.
>
> ***
>
> 105. Capital One received [Plaintiff]'s report with NCS data …
> 106. Onsite Manager received [Plaintiff]'s report with NCS data in it …
> 107. Leasing Desk received [Plaintiff]'s report with NCS data in it …

[DE 10, ¶¶ 10, 105-107]. While this Court understands that Supreme Court has instructed that "mere presence" of an inaccuracy in an internal credit file or the risk of future harm does not create a concrete injury for purposes of Article III standing, disclosures of inaccurate information contained in a credit file does. *See generally Ramirez*, 594 U.S. 413. Even though Plaintiff uses the term "received", Capital One, Onsite Manager, and Leasing Desk, could have only "received" Plaintiff's inaccurate credit file if Defendant *disclosed* it. [DE 10 at ¶¶ 105-107]. She also claims that Defendant's conduct "erected unprovoked barriers to securing housing and *stopped her from getting basic credit*." [*Id*. at ¶1, 10] (emphasis added); *see Markakos v. Medicredit, Inc*., 997 F.3d at 781 (holding that "an FDCPA violation might cause harm it if leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt").

Lastly, since standing "remains open to review at all stages of the ligation," and this case is now at the summary judgment, the Court recognizes that just "rel[ying] on [] allegations in [Plaintiff's Amended Complaint] is insufficient[.]" *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184 (7th Cir. 2021); *Friend v. CACH, LLC*, 2021 WL 4245069, at *2 (N.D. Ind. Sept. 17, 2021). Here, like in *Persinger*, the procedural posture is summary judgment. *Persinger*, 20 F.4th at 1189. Therefore, standing must be "set forth by affidavit or other evidence of specific facts …" *Id.*

In *Persinger*, the plaintiff's deposition testimony "undercut her allegations of financial, credit, and reputational injuries … [because] she explicitly disclaimed loss of money, housing, employment, or insurance (financial harms) and loss of credit (credit harm)." *Persinger*, 20 F.4th at 1191. But here, Plaintiff testified in her March 13, 2024 deposition that:

> A: … I was denied housing … So after further investigation, I called the apartment complex. I said what's going on? Why am I being denied? They said that it was because of this, this statement from National Credit Systems on my credit report saying that I owed $5,318 …
> ***
> Q: More generally, are there any other … denials like insurance denials or employment denials … that is kind of an economic denial apart from credit, per se?
> A: … I was denied housing and credit and it hurt my credit score.

[DE 104-15, pg. 5, 15]. As a result, Plaintiff has consistently alleged facts throughout this litigation that establishes a concrete "injury-in-fact" sufficient for Article III standing.

## CONCLUSION

For these reasons, the Court **DENIES** Plaintiff's Motion to Remand [DE 118].

SO ORDERED.

ENTERED: November 19, 2025.

/s/ GRETCHEN S. LUND
Judge
United States District Court