UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

ERIN BROWNE,

    Plaintiff,

    v.

EQUIFAX INFORMATION SERVICES
LLC,

    Defendant.

Case No. 4:23-CV-064-GSL

## <u>OPINION AND ORDER</u>

This is a case involving the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, in which Plaintiff, Erin Browne ("Browne")[1], asserts that Defendant, Equifax Information Services LLC ("Equifax"), maintained an inaccurate entry on her credit report, and continued to do so even after she disputed it, causing her harm. The parties have filed cross-motions for summary judgment on Browne's claims for relief. [DE 103 & 108]. The motions are briefed and ripe for ruling.[2]

Also ripe for ruling is Browne's Motion to Reconsider [DE 153], filed on December 5, 2025. There, Browne is requesting that the Court reconsider its November 19, 2025, denial [DE 151] of her request to remand this matter back to state court. *See* [DE 153]. The Court will address this motion below, and prior to deciding the motions for summary judgment.

---

[1] Erin Browne was formerly known as Erin Livesay.

[2] The parties have stipulated to the withdrawal of Browne's Exhibit 11 [DE 142-7] to her response to Equifax's motion for summary judgment. The Court being duly advised, and noting the agreement of the parties, hereby **GRANTS** the Stipulation [DE 143].

**Procedural History**

On April 26, 2023, Browne initiated this case in Indiana state court. [DE 4]. She alleges that Equifax violated §§ 1681e(b) and 1681i of the FCRA by falsely and inaccurately reporting that she owed a debt despite her multiple attempts to rectify the errors, causing her harm. [*Id*.].

On July 25, 2023, Equifax removed the case to this Court. [DE 1].  Shortly thereafter, Equifax filed a Motion to Dismiss [DE 6-7] requesting that the Court either dismiss the Complaint or allow Browne the opportunity to amend due to the lack of specific factual allegations. [DE 7 at 5].  As a result, Browne filed an Amended Complaint [DE 10] on August 21, 2023.[3] While the claims remain the same, Browne specified, *inter alia*, the harm she suffered explaining that "Equifax sold a credit report with the negative tradeline … caus[ing] Ms. Browne to be denied credit" and "[she] was stressed as a result of Equifax's inaction[.]" [DE 10 at ¶¶10, 143]. Equifax answered the Amended Complaint on September 5, 2023, which was later amended on July 29, 2024. [DE 13, 51].  The parties engaged in extensive discovery from then until April 2025. On April 11, 2025, the parties filed the instant cross-motions for summary judgment. *See* [DE 103, 108].

Shortly thereafter, and before the motions for summary judgment were fully briefed, Browne filed a Motion to Remand to State Court [DE 118], requesting that the Court remand this matter back to state court because Equifax, "as the party invoking jurisdiction[,] must prove Article III jurisdiction [and] … [it's] recent motion for summary judgment indicates [that] it has no basis." [DE 119 at 1]. For the reasons as fully set forth in the Court's November 19, 2025, Order, the Court denied Browne's request.  *See* [DE 151].

---

[3] The Court denied Equifax's motion to dismiss as moot after Browne amended her complaint. [DE 11].

The parties' motions for summary judgment became fully briefed on October 1, 2025. Additionally, Browne requested that the Court reconsider its denial of her motion to remand in the Motion to Reconsider [DE 152] filed on December 5, 2025.

### Factual Background[4]

Equifax is a consumer reporting agency ("CRA") that creates and maintains credit files on millions of consumers in the United States. [DE 104-1, ¶1]. It gathers information about consumers from various sources, including banks, collection agencies, lenders, and court records which it uses to create credit files. [*Id*. at ¶ 2]. The credit files are then used to prepare consumer reports which can be requested by subscribers when they need to evaluate whether to extend credit to a consumer. [*Id*. at ¶ 3].

A consumer is free to dispute information contained in a credit file kept by a CRA, such as Equifax. [*Id*. at ¶ 5]. When Equifax receives a dispute from a consumer, its process is to open a dispute case that tracks the progress of the "reinvestigation" in a system known as its "Consumer Management System or 'CCMS[.]'" [*Id*. at ¶5]. In reviewing the dispute, if Equifax can make updates to information contained in the consumer's credit file, based on the information or materials provided, Equifax's policy is to do so immediately. [*Id*. at ¶ 8]. Equifax maintains a standard known as an Independent Dispute Investigations Update Documents Standard, also referred to as "the Acceptable Documents Standard", which governs when it will use consumer-submitted documents to make immediate updates to information in a consumer's credit files. [*Id*. at ¶ 9]. For example, Equifax considers bankruptcy court documents as those that may be used to make immediate updates to information in a consumer's credit file. [*Id*. at ¶ 10]. However, it does

---

[4] The facts described in this section are undisputed. Because cross motions for summary judgment are at play, the Court will pull undisputed facts from both parties' statements of material facts.

not consider civil judgments to be a document that may be used to make an immediate update to a consumer's file without further investigation. [*Id*. at ¶ 12].

When further investigation of a consumer's dispute is required, Equifax's policy is to notify the source, also referred to as the "data furnisher", of the consumer's dispute. [DE 104-1 at ¶ 15]. Equifax does so by electronically transmitting a form called an Automated Consumer Dispute Verification ("ACDV")[5] to the source. [*Id*. at ¶ 17]. Equifax provides the source with all relevant information, including that submitted by the consumer as part of the dispute, and asks the source to investigate the dispute and advise Equifax if the account information the consumer is disputing is inaccurate. [*Id*. at ¶15]. Once the reinvestigation of the disputed information is complete, Equifax sends the consumer the results. [*Id*. at ¶ 20].  Equifax's policy is to complete the reinvestigation process within the time constraints provided by the FCRA.[6] [*Id*. at ¶ 21]. Additionally, if Equifax receives additional information from a consumer regarding a pending or completed dispute, its policy is to send the item to investigate status in a new case. [*Id*. at ¶ 56].

To comply with the FCRA, Equifax keeps a record of each time an inquiry is made to access a credit file. [DE 104-1 at ¶ 62].  There are several types of "inquiries", and not all result in the preparation of consumer reports. [*Id*. at ¶ 63].  For example, inquires made by Equifax to document file access undertaken as part of a reinvestigation of consumer disputes or when a consumer requests the disclosure of information on their credit file do not result in the preparation of a consumer report. [*Id*.].  However, a "hard" inquiry is one for credit information by a potential

---

[5] The use of the ACDV process is an industry standard that is used by all three nationwide consumer reporting agencies (Equifax, Experian, and Trans Union), and is implemented by a system called E-Oscar, which requires the data furnisher to view the ACDV and any associated information before providing a response. [DE 104-1 at ¶18].

[6] Pursuant to 15 U.S.C. § 1681i(a)(1)(A), generally, a consumer reporting company has 30 days from the date in which it receives the notice of dispute to conduct "a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file[.]"

creditor or employer made in connection with a consumer's application for credit or employment, and this type of inquiry always results in the preparation of a credit report. [*Id.* at ¶¶ 66-67]. "Hard" inquires may impact a consumer's credit score in contrast to "soft" inquiries[7], which do not impact a consumer's credit score, and are not disclosed in subsequent consumer reports. [*Id.*]

*Browne's Dispute History*

In October 2018, Browne entered into a one-year lease agreement with Copper Beech Townhome Communities Eight, LLC ("Copper Beech") set to commence in August 2019. [DE 106-1, ¶ 1]. Browne never actually occupied the leased premises due to her inability to comply with the lease's financial assurances. [*Id.* at ¶¶ 3, 13, 14-16]. Copper Beech terminated the lease and eventually secured another occupant of the unit that Browne was intended to be assigned. [*Id.* at ¶ 9]. Nonetheless, Copper Beech and its debt collector, National Credit Systems, Inc. ("NCS"), attempted to collect rent from Browne on the terminated lease even though Copper Beech never gave Browne possession. [*Id.* at ¶ 19]. Eventually, NCS reported to Equifax that it was seeking to collect a debt, in the amount of $5,318.00, from Browne on behalf of Copper Beech. [*Id.* at ¶19].

Browne first disputed her Equifax credit file on June 30, 2020. [DE 104-1 at ¶ 22][8]. She claimed that the NCS collection on behalf of Copper Beech did not belong to her. [*Id.*]. As a result, Equifax's automated process sent an ACDV to NCS, the "source", which included the account information as it then appeared on Browne's credit file, and a request that NCS investigate the

---

[7] An example of a "soft" inquiry is one made by an existing creditor to view how their account information appears on their consumer's credit file. [104-1 at ¶ 68]. Another example of a soft inquiry is when Equifax receives an inquiry to verify a consumer's identification information. [Id.]. Finally, a promotional inquiry is considered a special type of "soft" inquiry that does not result in the delivery of any account or creditor information, but rather, reflects the inclusion of the consumer in a prescreening list purchased by a potential creditor or insurer to make a firm offer of credit or insurance. [Id. at ¶ 70]. The only information published in response to a promotional inquiry is the consumer's name and address. [Id. at ¶ 71].

[8] The parties do not specify what information or documents Browne submitted to Equifax as part of the June 30, 2020, dispute. Additionally, the Court thoroughly reviewed the record in this case and could not locate it.

5

account. [*Id*. at ¶ 23]. On July 2, 2020, NCS responded to Equifax's ACDV, and verified that the collection account belonged to Browne, and that the account should report an unpaid collection in the amount of $5,318.00 on behalf of Copper Beech Townhome Communities. [*Id*. at ¶ 24]. As a result, Equifax concluded its reinvestigation and sent Plaintiff a letter outlining the results, which Plaintiff acknowledged receipt of. [*Id*. at ¶25-26].

Nine months later, on April 17, 2021, Equifax received a second dispute from Browne regarding the same NCS account. [DE 104-1 at ¶ 27]. In the "dispute package" submitted to Equifax, Browne detailed the situation regarding the lease agreement with Copper Beech, her inability to comply with the financial assurances, the fact that she never moved in, and the eventual termination of the lease. *See generally* [DE 109-2]. Browne also supplied Equifax with the following documents: a detailed timeline of events, the lease agreement that she and Copper Beech had entered into, concession addendums to the lease agreement, an email noting her application to lease a unit from Copper Beech was accepted, email exchanges between her and Copper Beech, and an invoice from Copper Beech showing an outstanding balance of $5,318.00 for "Lease Termination Fees … August 2019 – July 2020 Monthly Install". [*Id*.]. Equifax sent an ACDV to NCS which included a digital image of the written dispute package, the account information as it then appeared in Browne's credit file, and a request that NCS investigate the account. [104-1 at ¶ 29]. On April 23, 2021, NCS responded to the ACDV and verified that the collection account belonged to Browne and that the account should report as an unpaid collection in the amount of $5,318.00 on behalf of Copper Beech. [*Id*. at ¶ 30]. Equifax then sent Browne the results of the reinvestigation which Browne received on May 1, 2021. [*Id*. at ¶¶ 31-32].

On or around June 19, 2021, Browne submitted a third dispute, the second with a written dispute package, again disputing the NCS collection on behalf of Copper Beech. [DE 104-1 at ¶

33]. The contents of this dispute package were substantially like the one submitted in April 2021. [*Id*. at ¶ 34]. Again, Equifax sent an ACDV to NCS with a digital image of the written dispute package, Browne's account information, and a request that NCS investigate the account. [Id. at ¶ 35]. On July 12, 2021, NCS reported back to Equifax verifying that the collection belonged to Browne and that the account should report as an unpaid collection in the amount of $5,318.00 on behalf of Copper Beech. [*Id*. at ¶ 36]. Equifax notified Browne of the results on July 12, 2021. [*Id*. at ¶ 37].

On July 26, 2021, Equifax received a fourth and final dispute package from Browne. [DE 104-1 at ¶ 39]. Included in this dispute package was an "Order on Declaratory Judgment and Counterclaim" from the Tippecanoe County Superior Court in the case of *Erin B. Livesay v. Copper Beech Townhome Communities Eight, LLC,* 79D07-2105-SC-403. [*Id*. at ¶ 42]. The declaratory judgment declared that Browne owed nothing to Copper Beech and denied Copper Beech's counterclaim under the lease agreement.[9] [DE 135-1 at ¶ 50]. Despite this additional information, an agent for Equifax, Danisca Pinnoch, did not immediately remove the NCS collection from Browne's credit file without further investigation, per Equifax's "Acceptable Documents Standard." [DE 104-1 at ¶ 47]. Browne admits that none of the documents contained in the July 2021 dispute package, including the state court declaratory judgment, were of the type that may be used to make immediate updates to the information in her credit file without further investigation. [104-1 at ¶ 41-42; 142-1 at ¶ 41-42]. Browne also admitted that aside from the name "Erin B. Livesay", no other personal identifiable information was contained in the declaratory order. [142-1 at ¶ 43].

---

[9] On February 11, 2026, the Indiana Court of Appeals affirmed the trial court's denial of Copper Beech's motion to vacate the declaratory judgment. *Copper Beech Townhome Communities Eight, LLC v. Livesay,* 2026 WL 380019, at *3 (Ind. Ct. App. Feb. 11, 2026).

The following day, July 27, 2021, Pinnoch set a letter to Browne requesting enlarged photocopies of the dispute package. [104-1 at ¶ 48]. On the same day, Pinnoch sent an ACDV to NCS which included a digital image of the written dispute package, the account information as it then appeared in Browne's credit file, and a request for NCS to investigate the account. [*Id*. at ¶ 49]. On August 12, 2021, NCS responded to the ACDV verifying that the collection belonged to Browne and that the account should report as an unpaid collection in the amount of $5,318.00 on behalf of Copper Beech. [*Id*. at ¶ 51]. The response was reviewed by Equifax agent, Jenny Chaves. [*Id*. at ¶ 52]. In light of Equifax's policies and procedures, NCS' response did not require Equifax to take any specific action, and as a result, it accepted the account verification as relayed by NCS. [Id. at ¶ 53]. On August 12, 2021, Equifax concluded its reinvestigation of Browne's fourth dispute and sent her a results letter, which she received. [Id. at ¶¶ 54-55].

Near the end of August 2021, and without any additional information from Browne herself, Equifax received an instruction from NCS to delete the $5,318.00 on behalf of Copper Beech from Browne's credit file. [DE 104-1 at ¶¶57, 59]. Browne was notified of the deletion from her Equifax credit file on or around September 2, 2021, when Credit Karma sent her a credit monitoring alert. [*Id*. at ¶ 61]. To date, the NCS collection remains removed from her file. [*Id*. at ¶ 73].

Equifax records show that during 2021, that the only inquiries made were "promotional" in nature. [DE 104-1 at ¶ 69; DE 142-1 at ¶ 69]. And, since the NCS collection has not reappeared on her credit file after August 2021, no other consumer reports pertaining to Browne, published by Equifax, would have included that information. [DE 104-1 at ¶ 74].

**I. Browne's Motion to Reconsider**

*A. Background*

Browne moved to remand this matter back to state court on May 27, 2025. [DE 118]. She argues that this Court no longer had standing to hear this matter because Equifax, "as the party invoking jurisdiction[,] must prove Article III jurisdiction [and] … [it's] recent motion for summary judgment indicates [that] it has no basis." [DE 119 at 1]. More specifically, Browne claimed that since Equifax was the removing party, and that it argued in its motion for summary judgment that she "has incurred no damages – either economic or emotional distress damages[,] [Equifax] should be required to establish jurisdiction [in this Court]." [*Id*. at 6].

The Court denied Browne's request that this matter be remanded, noting that while the Supreme Court has instructed that the "mere presence" of an inaccuracy in an internal credit file, or the risk of future harm does not create a concrete injury for purposes of Article III standing, disclosures of inaccurate information contained in a credit file does. *See generally TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).  Browne's Amended Complaint alleges that her inaccurate report was received by various potential creditors, thereby asserting the inference it was improperly "disclosed" by Equifax, as well as testifying at her deposition that she was "denied housing and credit" due to Equifax's conduct. *See generally* [DE 151] (internal quotations omitted). In other words, Browne's Amended Complaint, as well as her deposition testimony, adequately alleged facts that established an "injury-in-fact" sufficient for Article III standing.

Browne is now requesting that the Court reconsider this ruling because (1) the housing denial took place before any dispute of Equifax's credit report, and therefore the denial could not have been caused by Equifax, causing no cognizable harm for federal jurisdiction, and (2) that the

Supreme Court has "effectively overruled" cases that this Court relied on in finding that "a lowered credit score suffices for article III jurisdiction[.]" [DE 153 at 1].

Equifax opposes this motion arguing that Browne's deposition testimony regarding her claimed inability to obtain housing was not purely limited to the alleged 2020 occurrence, as she also testified in her deposition that in 2021, she wanted to apply for housing but could not say if she did so. [DE 154 at 2]. Equifax also argues that Browne's response in opposition to its motion for summary judgment alleges that she "has presented sufficient evidence of damages to proceed to trial[.]" [*Id.* at 3] (internal citation omitted).

### B. Legal Standard

Under Rule 59(e), a party may file a motion to reconsider within 28 days of entry of the judgment. Fed. R. Civ. P. 59(e). However, "relief under Rules 59(e) and 60(b) are extraordinary remedies reserved for the exceptional case …" *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). These types of motions "serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990)). Specifically, "[a] Rule 59(e) motion will be successful only where the movant clearly establishes '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir.2012)).

### C. Discussion

First, Browne's assertion that this Court relied on case law that has been "effectively overruled by the Supreme Court," is incorrect. The Court stated that "the Seventh Circuit has accepted risk of

10

financial harm as a result of credit reporting agencies lowering their credit score as sufficient to confer Article III standing[,]" but then immediately explained that "a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court." *See* [DE 151 at 4] (internal quotations omitted). The Court further discussed how the "mere presence of an inaccuracy in an internal credit file or the risk of future harm does not create a concrete injury for purposes of Article III standing, [but] disclosures of inaccurate information contained in a credit file does." [*Id*. at 5]. The Court acknowledged that a risk of financial harm, "without more" would not be enough to establish an injury-in-fact for purposes of Article III standing. More importantly, the Court did not deny the request remand based only on a "risk" of financial harm to Browne. It denied remand because Browne herself testified that:

> A: … ***I was denied housing*** … So after further investigation, I called the apartment complex. I said what's going on? Why am I being denied? They said that it was because of this, this statement from National Credit Systems on my credit report saying that I owed $5,318 …
> \*\*\*
> Q: More generally, are there any other … denials like insurance denials or employment denials … that is kind of an economic denial apart from credit, per se?
> A: … ***I was denied housing and credit*** and it hurt my credit score.

[DE 104-15, pg. 5, 15]; [DE 151 at 5-6] (emphasis added).

Browne also argues that the housing denial took place before any dispute of the information contained in Equifax's credit report, and therefore the denial could not have been caused by Equifax. Because of this, Browne claims that reconsideration is warranted. However, as Equifax correctly points out, Browne's deposition covers more than just the 2020 housing denial. *See* [DE 154 at 2]. Browne also testified that she wanted to apply for housing in 2021 but could not say whether she did so at the time of her deposition. [*Id*.]; [DE 104-15 at 6]. Browne claims that "Equifax made no argument and provided no evidence that the housing referred to in the

11

deposition testimony arose as a result of the Equifax's alleged violations of the FCRA." [DE 153 at 5]. She goes on to say that "the FRCA requires all consumer reporting agencies to maintain a listing of any inquiries into the consumer's credit file … [therefore,] [h]ad Equifax published a report which would support this court's jurisdiction, it could have readily provided such evidence from its own records to support this Court's jurisdiction." [*Id*. at 5].

Browne supports this argument by citing to Seventh Circuit case law that explains that at this point in the proceedings, it is Equifax's burden to "set forth by affidavit or other evidence specific facts supporting their standing to sue." [DE 153 at 5] (internal citations omitted). "In the absence of any specific facts supporting a housing denial, this Court may not rest its assertion of jurisdiction upon a denial of housing at the summary judgment stage of these proceedings." [*Id*. at 6].

The Court disagrees with Browne's contention that Equifax failed to set forth specific facts supporting their standing to sue. Equifax pointed to Browne's deposition testimony where she testified that she was denied housing and credit, on what appears to be multiple occasions, including "possibly" 2021. *See Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1190-91, (7th Cir. 2021) (finding the plaintiff's deposition testimony of her alleged harms sufficient to establish a concrete harm for purposes of Article III standing: "[plaintiff] has standing to sue. She ***testified*** that Southwest invaded her privacy when it reviewed her credit information") (emphasis added). Browne's theory in her motion to remand, and now again in this motion to reconsider, that Equifax must *prove* that she was damaged to establish standing is incorrect.

*D. Conclusion*

For the forgoing reasons, the Motion to Reconsider [DE 153] is **DENIED**.

## II. Motions for Summary Judgment

*A. Legal Standard*

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

When cross-motions for summary judgment are filed, the court "look[s] to the burden of proof that each party would bear on an issue of trial[, and] then require[s] that party to go beyond the pleadings and affirmatively establish a genuine issue of material fact." *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 643 (7th Cir. 2007). In cross-moving for summary judgment, a party is not "relieve[d] of [its] burden as the nonmovant[] relative to the [movants] motion for summary judgment[,] … [therefore the nonmovant is still] required to set forth specific facts showing why summary judgment on behalf of the [movant] [i]s not appropriate." *Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 603 (7th Cir. 1989). However, it is worth noting that, "[t]he contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *M.O. v. Indiana Dep't of Educ.*, 635 F. Supp. 2d 847, 850 (N.D. Ind. 2009).

## B. Discussion

Browne alleges that Equifax negligently and willfully violated §§ 1681e(b) and 1681i of the FCRA.[10] However, in her response to Equifax's motion for summary judgment, she "abandon[ed] her request for relief under § 1681e(b)." [DE 142-8 at 6]. Therefore, all that remains is Equifax's alleged violation of § 1681i and claim for punitive damages.

"Congress enacted the Fair Credit Reporting Act, codified at 15 U.S.C. § 1681 *et seq.*, to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 809 (7th Cir. 2023) (internal quotations omitted). If a consumer believes that her credit report is inaccurate, she "can

---

[10] Browne did not specify in her Amended Complaint whether she is alleging that Equifax committed a negligent or willful violation. However, in her motion for summary judgment she argues that Equifax's alleged violations were both negligent and willful but only discusses in detail how they were negligent in nature. *See* [DE 106 at 1, 16, 18-19, 23].

dispute [her] report with the CRA that prepared it. The CRA is then obligated to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate[.]" *Id*.

15 U.S.C. § 1681i of the FCRA covers procedures in cases of disputed accuracy. *See generally* 15 U.S.C. § 1681i. To prevail on a claim pursuant to this subsection, Browne must show that (1) her consumer file contained inaccurate information; (2) the inaccuracy was due to Equifax's failure to follow reasonable procedures to assure maximum accuracy; (3) that she was injured; and that (4) her injury was caused by the inclusion of the inaccurate entry. *Mason v. Equifax Information Services LLC*, 2024 WL 3373439, at *2 (N.D. Ind. July 10, 2024). Additionally, such violations can be negligent, willful, or both. *Persinger*, 20 F.4th 1184 at 1194. "A negligent violation entitles a consumer to actual damages," while "[a] willful violation entitles a consumer to actual damages or statutory damages, with punitive damages left to the court's discretion." *Id*. (internal citations omitted).

Both Browne and Equifax argue that they are entitled to summary judgment on this claim. Equifax presents the following arguments: Browne's July 2020, April 2021, and June 2021 disputes did not present a cognizable claim of inaccuracy; Equifax's reinvestigation of Browne's July 2021 dispute was reasonable; Browne cannot establish actual damages as a result of Equifax's reinvestigation of the July 2021 dispute; and the available evidence belies any claim that Browne suffered emotional distress. In contrast, Browne claims that she is entitled to summary judgment on the § 1681i claim because Equifax had an independent duty, as required by law, to conduct a reasonable reinvestigation to determine the accuracy of the NCS tradeline and it failed to do so.

*1. Accuracy of Equifax's Consumer Report*

"A threshold requirement for claims under [§ 1681i] is that there must be an inaccuracy in the consumer's credit report." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir.

2021). By inaccurate information, the Seventh Circuit "... mean[s] factually inaccurate information, as consumer reporting agencies are neither qualified nor obligated to resolve legal issues." *Id*. A factual inaccuracy includes "the amount a consumer owes, and what day a consumer opened an account or incurred a payment." *Id.* at 568. Whereas a dispute regarding a legal inaccuracy, would occur when a consumer "does not dispute whether a debt existed or its amount, but instead contend[s] he [i]s not required to pay the debt because it was "legally invalid." *Id*.

This guidance from the Seventh Circuit clearly shows that Browne's first three disputes, occurring in July 2020, April 2021, and June 2021, do not meet the threshold requirement for inaccuracy as the information she submitted required Equifax to interpret the lease agreement, something that it is not qualified to do. Browne argues that the holding in *Chaitoff* supports the premise that Equifax could have interpreted the lease agreement attached to her first three disputes. [DE 142-8 at 7-8]. However, *Chaitoff* is not analogous to the facts here, as the Seventh Circuit held there that "taking notice of previously *resolved* legal disputes involves some knowledge of the legal impact of court decisions, [but] it does not require the consumer reporting agency to make any legal determinations." *Chaitoff v. Experian Info. Sols., Inc.,* 79 F.4th 800, 815 (7th Cir. 2023) (emphasis added). The dispute between Browne and Copper Beech in Indiana state court was ongoing at the time she submitted the July 2020, April 2021, and June 2021 disputes. Therefore, the Court finds that, as a matter of law, Browne has failed to prove an inaccuracy in the Equifax credit report at the time of her July 2020, April 2021, and June 2021 disputes. *See Chuluunbat v. Experian Info. Sols., Inc.,* 4 F.4th 562, 567 (7th Cir. 2021) (holding that a "threshold requirement for claims under [§ 1681i] is that there must be an inaccuracy in the consumer's credit report"). Accordingly, she is not entitled to relief as it pertains to any potential harm arising from those disputes.

Equifax has presented no argument regarding Browne's final dispute, occurring in July 2021, and whether she presented a cognizable claim of inaccuracy. Rather, it argues that it has not violated the FCRA because its reinvestigation of the July 2021 dispute was reasonable notwithstanding the fact that Browne has not and cannot establish any damages suffered from the alleged violation. *See generally* [DE 104 at 16-25]. Therefore, the Court will assume that Equifax is conceding to the inaccurate information element for the July 2021 dispute and will move on to analyzing the remaining § 1681i elements.

*2. Harm Caused by the July 2021 Dispute*

Before determining the reasonableness of Equifax's reinvestigation of Browne's July 2021 dispute, the Court must determine whether Browne has provided evidence that she has suffered a legally discernable harm. If the essential element of harm is not proven, whether Equifax's conduct was reasonable, is inconsequential. *See Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 689 (7th Cir. 2019).

Browne has moved for partial summary judgment, leaving the issue of damages for trial. However, she asks the Court to establish that Equifax violated § 1681i. In doing so, she fails to address the element of harm and how Equifax's actions caused her injury. "[T]he [FCRA] does not create liability without causation. To bring a successful claim, the consumer ***must also show that she suffered injury*** as a result of any inaccurate information." *See Aldaco*, 921 F.3d 685 at 689 (emphasis added); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (holding that "[b]efore any discussion of the reasonableness of the reinvestigation is necessary, however, [a plaintiff] must show that she suffered damages as a result of the inaccurate information"); *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir.2001)

(explaining that "[w]ithout a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages").

While failure to address an essential element of her claim in moving for summary judgment could be considered futile, Equifax has moved for summary judgment as well and has fully developed the argument regarding Browne's inability to establish causation of harm and damages. Accordingly, Equifax bears the initial responsibility to "demonstrate the absence of a genuine issue of material fact" as to element of harm. *Celotex Corp.,* 477 U.S. 317 at 323. Browne then "must present evidence sufficient to establish a triable issue of fact" on the same element. *McAllister*, 983 F.3d 963 at 969.

Equifax argues that Browne's claimed two credit denials[11] cannot be attributed to it. Equifax contends that Browne's claim for "possibly" applying for housing in 2021, if done, was not done with the use of Equifax generated credit reports[12], and her alleged emotional harms fail to meet the strict standard as set forth by the Seventh Circuit. In response, Browne claims that she has presented ample evidence of "wasted time" and "emotional distress" and that the same evidence presents a question of fact. [DE 142-8 at 23].

As to wasted time, Browne points to the time spent seeking legal help, commencing legal action in state court against Copper Beech, obtaining and reviewing credit reports and drafting disputes, and researching how to secure the removal of the NCS account from her credit file. [*Id*. at 23-24]. She further alleges that time spent doing the above, caused her lost time with family

---

[11] The Amended Complaint contained allegations of Browne being denied credit due to the negative NCS tradeline on her credit report, but she has conceded that those denials were based on credit reports provided by TransUnion. Therefore, there is no causal relation between Equifax and those credit denials. [DE 104-1 at ¶¶ 75-77].

[12] Browne testified at her deposition that she wanted to apply for housing in 2021 but could not say whether she did. [DE 104-15 at 6]. Equifax has provided undisputed evidence that if she did apply for housing in 2021, she was not denied based on any action of Equifax because "during the entire year of 2021, there were no 'hard' inquiries at all to [Browne's] credit file." [104-1 at ¶65]. Browne also admitted in the summary judgment briefing that she "did not seek out independent housing [] out of fear of being rejected[.]" [DE 142-8 at 28].

and friends and required her to take time off work. In support, Browne has cited nonbinding case law where district courts, outside of the Seventh Circuit, have recognized that wasted time may be recoverable as an element of damages. *See* [DE 142-8 at 22]. Yet, Browne has provided no evidence that this alleged wasted time was caused by the July 2021 dispute.

It is undisputed that the suit against Copper Beech commenced and was resolved ahead of the submission of the July 2021 dispute, therefore that "wasted time" cannot be attributable to Equifax.  [DE 104-1 at ¶ 42]. Also, she was represented by Attorney Duran Keller at the time she submitted the July 2021 dispute package, and he submitted it on her behalf. [*Id*. at 39]. Her claim for taking time off work is supported only by a single statement that her boyfriend, Clay Trout, made in his deposition: "I'm sure she's had to take time off work and away from making money in other regards to deal with this matter." [DE 138-6 at pg. 17]. This is far too speculative to be recoverable. *See Foster v. PNC Bank, National Association*, 52 F.4th 315, 320 (7th Cir. 2022) (holding that "mere speculation cannot be used to manufacture a genuine issue of fact" at summary judgment) (internal quotations omitted). Because of this, and her failure to present sufficient evidence of "wasted time" during the relevant timeframe, the Court finds that there is no outstanding question of fact as to her alleged injury of "wasted time".

Next, Browne claims that she has suffered emotional distress caused by Equifax's actions. The Seventh Circuit has explained that "emotional distress [suffered by a plaintiff] … must be described in reasonable detail – conclusory statements are insufficient." *Persinger*, 20 F.4th 1184 at 1194. Equifax argues that Browne "has no evidence, apart from self-serving statements, that she actually experienced emotional distress as a result of her receipt of Equifax's August 12, 2021, reinvestigation results letter, and the contemporaneous evidence belies any such claim." [DE 104-1 at ¶ 92]; [DE 102 at 21-24].  Equifax claims that the testimony of Browne's mother and boyfriend

"can charitably described as parroting [Browne's] own deficient statements[,]" and that the medical records summarizing treatment of her anxiety and depression during the time at issue, fare no better. [DE 102 at 23].

Browne argues, and the Court agrees, that her testimony alone can be sufficient to show emotional injury, so long as it is explained in reasonable detail. [DE 142-8 at 25]; *see also Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001). She further argues that "she knew what stress felt like in her body and attributed th[o]se feelings directly to the issues with Equifax." [DE 142-8 at 27]. In support of this argument, she cites to various parts of her deposition testimony as well as the testimony of her mother and boyfriend. [*Id.*].

A review of the cited portions of the deposition testimony reveals the following: Browne's was "incredibly anxious all of the time", "embarrassed", "losing sleep", and "distracted at work" because of being denied housing in the fall of 2020 due to the negative credit line on her credit report. [E. Browne Depo Vol I at pg. 28-31]. She explained that her anxiety at that time, manifested physically with "pain in [her] stomach and tension headaches," as well as "loss of appetite and [] loss of sleep in general." [*Id.* at 31]. She was also "obsess[ed] [with] getting [the negative tradeline] off [her] credit." [*Id.* at 31]. She appears to link this stress and anxiety to "dirty Copper Beech Apartment complex that was scamming [her] out of money[,]" while also mentioning "a dirty credit reporting agency that didn't verify the debt in the first place." [*Id.*] As to Equifax specifically, she testified that she "felt anxious and panicky and, like, twisting in [her] stomach … got headaches … [was] stressed at work … [and] lost sleep over thinking [about] what [she was] going to do." [*Id.* at 116].

When asked "in what ways did the emotional harms that you are claiming were caused by Equifax interfere with your daily living activities," Browne responded that it caused her to be

"preoccupied … distracted at work … not mentally present all of the time … tired … lost sleep … irritable … [and have] less time to do things that [she] enjoy[ed] …" [*Id*. at 119-121]. Browne's testimony is devoid of how the July 2021 dispute *caused* her emotional distress. If the only evidence before the Court was Browne's testimony, her claim would undoubtedly fail as it appears to be what the Seventh Circuit forbids, "self-serving conclusory statements about her emotional distress" that fail to "explain the circumstances of h[er] injury in reasonable detail." *Bagby v. Experian Info. Sols., Inc.*, 162 Fed. App'x 600, 605 (7th Cir. Jan. 4, 2006); *Huzier*, 2025 WL 3181687, at * 14; *see also Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (explaining that "[w]e[,] [the Seventh Circuit,] have required that when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements") (internal quotations omitted) *and Laura v. Experian Info. Sols., Inc.*, 2022 WL 823853, at *3 (N.D. Ill. Mar. 18, 2022) (holding that the plaintiff "has not met her burden to produce evidence of damages for emotional distress … [as she] relies on the conclusory assertions that she experienced frustration, despair, and hopelessness after Experian's alleged inaccurate reporting[,] … [and] [s]he offers only her own testimony as proof of her damages. Her mention of her credit issues to her psychiatrist does not bolster her claims as she admits that she did not seek psychological treatment for the emotional distress [the CRA] allegedly caused").

However, Browne has also provided treatment records of counseling she received by Dr. Sharon D. Samsell. [DE102-3]. In a discharge summary authored by Dr. Samsell, she indicated that she first began counseling Browne in February 2021 and terminated care in April 2022. [DE 102-3 at 17]. Dr. Samsell reported that she would see Browne 2-3 times per month for issues involving "anxiety, spirituality, relationship with her boyfriend, stress of the pandemic and housing

… [and] [d]ue to some unusual circumstances involving credit reporting[,] she was not allowed to live where she wanted." [DE 102-3 at 17]. Looking to the treatment records for visits that occurred between July 26, 2021, and September 2, 2021, the relevant time, there is no mention of Equifax or how it was the cause of her anxiety. [DE 102-3 at 13-14]. Dr. Samsell does however note, that during the August 4, 2021, visit, that Browne "has lead on possible ap[artment] … [and] overall doing well." [*Id*. at 13]. During the August 11, 2021, visit, Browne told Dr. Samsell that she had a "solution to housing 'for now[.]'" [*Id*.].

Browne was also treated by Dr. Douglas Mulinix during the relevant time frame, and before and after as well. *See* [DE 102-5]. A review of those medical records show that Browne did not attend any medical appointments with Dr. Mulinix during the relevant time frame. [*Id*.] However, she was examined by him on September 22, 2021, and his notes do not address anything related to Equifax or the credit dispute. *See* [*Id*. at 33]. In fact, her psychiatric review during that visit was "significant for [] school performance concerns." [*Id*.]. In her response in opposition to Equifax's motion for summary judgment, Browne does not address Dr. Samsell or Dr. Mulinix's records directly, but rather points to the fact that her mother, Kim Livesay, can "corroborate[]" the fact that she "sought counseling, in part, to help navigate the stress of dealing with the false credit reporting." *See* [DE 142-8 at 26].

In *Huizar v. TransUnion LLC*, 2026 WL 45203, at *13 (N.D. Ind. Jan. 7, 2026)[13], the district court found that the plaintiff had described his injury in reasonable enough detail to create a triable issue of fact as to the harm element of his FRCA claim. More specifically, it held that the plaintiff "provided detailed deposition testimony regarding the stress TransUnion's allegedly inaccurate reporting caused him, the anxiety medication he takes, and the embarrassment he has

---

[13] Counsel for Browne was also counsel of record for the plaintiff in *Huziar. Huizar,* 2026 WL 45203, at *1.

suffered from not being able to purchase a home like his peers and co-workers. *Id*. The stark contrast between Browne's situation and the plaintiff in *Huzier* is that there, the plaintiff was denied a mortgage several times based on his credit report. *Id*. While the court explained that the plaintiff would still have to "tie[] the denial of his mortgage applications to TransUnion's credit score reporting specifically …" he was able to furnish evidence that supported a *causal relation* between the mortgage denials and Trans Union's conduct. *Id*. at *12. All Browne has done here is supply deposition testimony, with treatment records that do not corroborate, that the July 2021 dispute with Equifax caused her to feel stressed, anxious, and distracted. These are conclusory statements that fail to describe the circumstances of her injury, allegedly caused by Equifax, in reasonable detail. *Sarver*, 390 F.3d at 971. Accordingly, Browne's § 1681i claim, and the accompanying claim for punitive damages, fail. *See Ayala v. Experian Info. Sols., Inc.*, 2024 WL 1328827, at *5 (N.D. Ill. Mar. 28, 2024) (holding that "Plaintiff's § 1681i(a) claim fails because …[he] cannot point to any evidence that [the CRA] reported inaccurate information that was the subject of Plaintiff's dispute or that any such report caused him harm").

## CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** that:

(1) Browne's Motion to Reconsider [DE 152] is **DENIED**;

(2) the Parties Stipulation [DE 143] is **GRANTED**;

(3) Browne's Motion for Summary Judgment [DE 108] is **DENIED**;

(4) Equifax's Motion for Summary Judgment [DE 103] is **GRANTED**; and,

(5) the Clerk is **DIRECTED** to enter Judgment against Browne and in favor of Equifax. Browne takes nothing by her Amended Complaint.

 SO ORDERED.

 ENTERED: March 16, 2026.

/s/ GRETCHEN S. LUND
Judge
United States District Court